McCAMANT v. McCAMANT et al.   (No. 8379.)

(Court of Civil Appeals of Texas. Ft. Worth. May 27, 1916. On Motion for Rehearing, July 1, 1916.)

1. BILLS AND NOTES ⊝⇒299 — ACTION AGAINST INDORSER—TIME—STATUTE.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 579, relating to the liability of an indorser, and providing how it may be fixed by suit against the maker, etc., in the district or county court, applicable to negotiable instruments indorsed after as well as before maturity, there was no cause of action against the payee and indorser of a note, where suit thereon was not filed before the first term to which suit could be brought after the right of action accrued, or before the second term of such court, and where the suit was not filed until more than a year after the maturity of the note, and where there was no showing of the indorser's waiver of the formalities requisite to fix his liability.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 680–705; Dec. Dig. ⊝⇒ 299.]

2. JUDGMENT ⊝⇒358—SUIT FOR VACATION— GROUNDS—INSUFFICIENCY OF PETITION.

A judgment will not be set aside for defects or insufficiency in the pleadings, especially where the alleged defect was amendable or had been waived by joining issue and by going to trial.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 696, 701; Dec. Dig. ⊝⇒358.]

3. JUDGMENT ⊝⇒18(2) — VOID JUDGMENT — WANT OF PLEADING.

Where a petition is defective in substance to the extent of failing to show a cause of action, a judgment for the plaintiff is null and void.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 36; Dec. Dig. ⊝⇒18(2).]

4. BILLS AND NOTES ⊝⇒299—LIABILITY OF INDORSER—PRIMARY OR SECONDARY LIABILITY.

An indorser is ordinarily only secondarily liable, and only in a case where the indorsement was made at the execution and delivery of the instrument is he primarily liable so as to dispense with the necessity of fixing his liability by compliance with statutes regulating the bringing of such suits at a given term.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 680–705; Dec. Dig. ⊝⇒ 299.]

5. BILLS AND NOTES ⊝⇒299—LIABILITY OF INDORSER—PLEADING—EXCUSE OF DELAYING ACTION.

To bind an indorser where suit has not been brought within the time required by law, matters of excuse must be alleged and proven.

[Ed. Note.—For other cases, see Bills and Notes. Cent. Dig. §§ 680–705; Dec. Dig. ⊝⇒ 299.]

6. JUDGMENT ⊝⇒485 — VACATION — INVALIDITY.

A judgment, the invalidity of which is apparent upon the record, may be successfully attacked at any time and under any circumstances.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 919; Dec. Dig. ⊝⇒485.]

7. COURTS ⊝⇒35 — JURISDICTIONAL FACTS — PRESUMPTION.

Every presumption will be indulged in favor of the records of superior courts; and, if the record is silent as to jurisdictional facts, it will be aided by presumptions; but there can be no presumption against the record, so that where it recites jurisdictional facts not sufficient to confer jurisdiction, there can be no presumption that the recital is incorrect or incomplete.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 140, 141, 145, 146; Dec. Dig. ⊝⇒35.]

8. JUDGMENT ⊝⇒386(2)—SUIT FOR VACATION —LACHES.

Neither lapse of time nor laches affect the right to vacate a judgment void on its face.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 736; Dec. Dig. ⊝⇒386(2).]

On Motion for Rehearing.

9. BILLS AND NOTES ⊝⇒467(3) — ACTION AGAINST INDORSER — PLEADING — TIME OF TRANSFER.

A petition in an action against the maker, the payee and indorser of a note, alleging that the note was due and wholly unpaid; that plaintiff was an innocent holder for value; that the defendant payee in the note indorsed it in blank and in due course of business to the plaintiff, who became the owner and holder thereof for value, not expressly alleging the date of the indorsement—in effect averred that plaintiff acquired the note before maturity.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 1488; Dec. Dig. ⊝⇒467(3).]

10. COMMON LAW ⊝⇒6—LAW MERCHANT— ADOPTION BY STATE.

The law merchant is part of the common law adopted by the state of Texas.

[Ed. Note.—For other cases, see Common Law, Cent. Dig. § 6; Dec. Dig. ⊝⇒6.]

11. BILLS AND NOTES ⊝⇒327—TRANSFER— "HOLDER IN DUE COURSE."

A "holder in due course" is one who has taken an instrument complete and regular on its face, and has become the owner of it before it was overdue (citing Words and Phrases, 2d Series).

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 792; Dec. Dig. ⊝⇒327.]

12. BILLS AND NOTES ⊝⇒327—TRANSFERS— "BONA FIDE HOLDER FOR VALUE."

An innocent or "bona fide holder for value" of negotiable paper is one who has taken it in good faith for a valuable consideration in the ordinary course of business and when it was not overdue.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 792; Dec. Dig. ⊝⇒327.

For other definitions, see Words and Phrases, First and Second Series, Bona Fide Holder.]

13. JUDGMENT ⊝⇒248—VALIDITY—NECESSITY OF PLEADINGS.

Until their action is called in exercise by pleadings, courts have no more power to render judgment in favor of a person than they have to render judgment against a person until he has been brought within their jurisdiction.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 434; Dec. Dig. ⊝⇒248.]

Appeal from Tarrant County Court; Charles T. Prewitt, Judge.

Suit by Mrs. Minnie May McCamant, on behalf of herself and as community administratrix of the estate of herself and of her de-

ceased husband, W. A. McCamant, against R. L. McCamant and others, to vacate a judgment obtained by defendant McCamant. Judgment against plaintiff individually and as community administratrix, denying the relief sought, and for costs of suit, and she appeals. Reversed, and cause remanded.

N. J. Wade, of Ft. Worth, for appellant. McCart, Curtis & McCart, of Ft. Worth, for appellees.

BUCK, J. On January 14, 1910, J. W. and J. H. Woodard, of Tarrant county, executed and delivered to Mrs. Minnie May McCamant, community administratrix of the estate of herself and her husband, W. A. McCamant, deceased, a certain note in the sum of $700, due August 1, 1910. On January 1, 1911, Mrs. McCamant for the purpose of securing her brother-in-law, R. L. McCamant in the payment of certain indebtedness due him by the community estate of which Mrs. McCamant was administratrix, and to secure him against loss by reason of the payment of a certain $400 note, which W. A. McCamant had, prior to his death, executed in favor of an El Paso bank, transferred and delivered the Woodard note to said R. L. McCamant, and indorsed on the back thereof as follows: "Minnie May McCamant, Community Administratrix." On October 30, 1911, suit was filed in the county court of Tarrant county for civil cases by R. L. McCamant on his note and against J. W. and J. H. Woodard and Minnie May McCamant, as community administratrix, the petition alleging, in part, as follows:

"That on, to wit, January 14, 1910, the defendants J. W. Woodard and J. H. Woodard, made, executed and delivered, for a valuable consideration, their certain promissory note of that date in the sum of $700, payable to the order of Minnie May McCamant, community administratrix, payable on or before August 1, 1910, with interest after date at the rate of 8 per cent. per annum. Said note further stipulated that, should it not be paid at maturity and collected by an attorney or legal proceedings an additional sum of 10 per cent. on the amount of the note should be added as attorney's fees. And said note is long since due and wholly unpaid. That plaintiff is an innocent holder for value of said note, for that the defendant, payee in said note, indorsed the same in blank, and in due course of business plaintiff became the owner and holder of same for value, and brings this suit by his attorney to enforce collection of the same."

J. H. Woodard and Mrs. McCamant having been served, and Mrs. McCamant having filed her formal answer, consisting of general demurrer and general denial, on March 12, 1912, judgment was entered in favor of R. L. McCamant, plaintiff, against J. H. Woodard and Mrs. Minnie May McCamant, as administratrix, in the sum of $903, principal, interest and attorney's fees. The judgment further recited that:

"Plaintiff asked that the defendant J. W. Woodard be dismissed from said cause; sheriff's return showing that said defendant was de-

ceased. It is therefore ordered that said cause be, and it is hereby, dismissed as to said defendant, at the cost of the plaintiff."

On October 8, 1914, this suit was filed by Mrs. Minnie May McCamant in the same court, in which R. L. McCamant recovered the judgment hereinabove set out. Mrs. McCamant, on behalf of herself and as community administratrix of the estate of herself and deceased husband, sought to have vacated the judgment of March 12, 1912, aforesaid, and prayed for other relief not necessary here to consider, making parties defendant R. L. McCamant and his attorney and one W. H. James, who was alleged to reside in Hunt county, Tex., and who, it was alleged, was setting up some claim to the judgment aforementioned. As equitable grounds for the setting aside and vacating of the judgment obtained by R. L. McCamant against her, plaintiff pleaded, in part, as follows:

(1) That the note transferred by her to R. L. McCamant was indorsed without recourse. (This allegation was not sustained by proof.)

(2) That suit thereon was not filed before the first term to which suit could be brought after the right of action had accrued, or before the second term of said court, as provided in article 579, Vernon's Sayles' Texas Civil Statutes, but in fact suit was not filed until more than a year after the maturity of the note, and that therefore the plaintiff in the former suit had not complied with the law necessary to fix the liability of an indorser.

(3) That the trial court erred in dismissing, upon the request of plaintiff, the suit as to J. W. Woodard, alleged to be deceased, said Woodard being one of the makers of said note sued on, and plaintiff herein being only secondarily liable, if at all, as indorser on said note.

(4) In the suit whose judgment was sought to be set aside, plaintiff made no allegations or contentions, nor was any proof offered to show the insolvency of the makers of said note, or of the estate of J. W. Woodard, deceased, of which the said J. H. Woodard was administrator, and that, therefore, the plaintiff herein was not bound on said note, inasmuch as R. L. McCamant made no claim against her except as an indorser.

(5) That the petition of plaintiff in the suit whose judgment was attacked contained no allegation that plaintiff herein bound herself, or intended to bind herself, thereby to pay said note, and that therefore the petition alleged no cause of action against her.

She further alleged that:

"She had no actual knowledge that this judgment had been entered, or even that the case had been set down for trial; that while it is true a formal answer of general demurrer and general denial had been filed by her attorneys, neither she nor her said attorneys took any further note of the case, nor was it necessary, under the state of the pleading, without same had been amended, that she should do so."

The case was submitted to the jury on special issues, which, with the answers thereto, are hereinafter set out:

Q. (1) Were J. W. and J. H. Woodard insolvent from the 1st day of January, 1911, until the 30th day of October, 1911. A. Yes.

"Q. (2) If you answer 'yes' to the first question, then did such insolvency continue during the whole period between the 1st day of January, 1911, and the 30th day of October, 1911? A. Yes.

"Q. (3) Were J. W. and J. H. Woodard insolvent on the first Monday in January, 1911? A. Yes."

Upon the motion of defendants R. L. McCamant, W. H. James, and J. H. Woodward, the latter individually and as the administrator of the estate of J. W. Woodard, deceased, judgment was rendered against plaintiff, both personally and as community administratrix, for all costs of suit, and denying the relief sought, from which judgment the plaintiff appeals.

[1] We are of the opinion that the petition of the plaintiff in the suit of R. L. McCamant against plaintiff herein and others, which resulted in the judgment of March 12, 1912, did not show a cause of action against Mrs. McCamant as an indorser, and was bad as against a general demurrer. In the case of Beauchamp v. Chester et al., 39 Tex. Civ. App. 234, 86 S. W. 1055, it is held that a petition, disclosing that defendant is sued as an indorser, and that the time has passed when his liability as such can be fixed, either by suit or protest, and failing to allege any waiver by defendant of formalities requisite to fixing his liability, is bad on general demurrer. In the case of Smith v. Richardson Lbr. Co., 92 Tex. 448, 49 S. W. 574, Judge Brown, speaking for the court, says:

"If the plaintiff's petition had not contained the allegation that J. C. Tyree was notoriously insolvent at the time the suit should have been brought to fix the liability of the indorser, no cause of action would have been shown against W. B. B. Smith, because it appeared from the allegations in the petition that suit was not brought either to the first or the second term of the court after the debt matured. It devolved upon the plaintiff to allege and prove in this case one of the exceptions expressed in article 1204 (now article 1843), in order to maintain this action against the indorser, who was discharged by the failure to sue at the first or second term of the court unless one of the exceptions which relieved the holder of the note from bringing such suit existed. Fisher v. Phelps, 21 Tex. 555; Elliott v. Wiggins, 16 Tex. 596."

[2] Article 579, supra, applies to negotiable instruments indorsed after maturity, as well as those indorsed before maturity. Caldwell v. Byrne, 30 S. W. 836; Burke v. Ward, 32 S. W. 1047. Therefore it would appear that this case comes within the rule laid down by the Supreme Court in Smith v. Lumber Co., supra. It is said in 23 Cyc. 929:

"A judgment will not be set aside on account of defects or insufficiency on the pleadings, especially where the alleged fault was amendable, or has been waived by joining issue and going to trial; although it seems a judgment may be vacated if the declaration or complaint states no cause of action, or contains no averments showing liability on the part of the defendant."

[3] 1 Black on Judgments (1891) § 170, defines and distinguishes void and voidable judgments, and in section 183, it is said:

"A judgment must accord with and be warranted by the pleadings of the party in whose favor it is rendered. * * * So where the declaration is defective in substance to the extent of failing to show a cause of action, no judgment can be entered upon it."

While it is asserted that a judgment cannot be regarded as entirely void when jurisdiction over both the parties and the subject-matter is once obtained, and that no error committed in the exercise of that jurisdiction can make the proceedings or judgment of the court void (Freeman on Judgments, § 135a), yet, as said by Black in his work aforementioned (section 184):

"In no proper sense can a court of law be said to have jurisdiction if there is no specific question or controversy submitted for its determination. It is not enough that the parties are properly in court. That does not give the tribunal power to adjudicate any and all matters of difference between them. When we speak of 'jurisdiction of the subject-matter,' we do not mean merely cognizance of the general class of actions to which the action in question belongs, but we also mean legal power to pass upon and decide the particular contention which the judgment assumes to settle. And how can a court acquire jurisdiction of the particular contention, except it be clearly marked out and precisely defined by the pleadings of the parties? And how can that be done, in any mode known to the law, save by the formation of a regular issue?"

For illustration, the district court has jurisdiction over and power to grant divorces, and also to determine questions involving the title to land. Suppose a son should sue his father and mother for an interest in land, and upon a hearing, with all parties before the court, the court should proceed to grant a divorce to one of the parents, could it be reasonably contended that such a judgment was not absolutely void, a mere nullity? We feel sure no one would so contend.

[4, 5] An indorser is ordinarily only secondarily liable, and only in the case where the indorsement was made at the time of the execution and delivery of the instrument to the payee can he be said to be primarily liable, so as to dispense with the necessity, on the part of him who seeks to hold such indorser primarily liable, of fixing such liability by a compliance with statutes regulating the bringing of such suits to a given term. Carr's Ex. v. Rowland, 14 Tex. 275; Kennon v. Bailey, 15 Tex. Civ. App. 28, 38 S. W. 377; Derrick v. Smith, 148 S. W. 1173; Kampmann v. Williams, 70 Tex. 568, 8 S. W. 310. In order to bind an indorser where suit has not been brought within the time required by law, matters of excuse must be alleged and proven. Mullaly v. Ivory, 30 S. W. 259; Seguin Milling & Power Co. v. Guinn, 137 S. W. 456; Buster v. Woody, 146 S. W. 689; Dunn v. Townsend, 163 S. W. 312; Bank v. Powell, 149 S. W. 1096; Dillard v. Lbr. Co.,

141 S. W. 1023; Lbr. Co. v. Lee, 7 Tex. Civ. App. 522, 27 S. W. 161.

[6-8] Appellees urge that appellant's petition being in the nature of a bill of review, in order to entitle her to the relief sought, it should show: (1) Diligence on her part to prevent the original judgment; (2) a good defense to the original suit; (3) that a different result would follow on a new trial—none of which does her petition show. It may be conceded that appellant's petition is barren of such a showing, but by reference to the cases cited by appellees in support of this proposition (Burnley v. Rice, 21 Tex. 183; Clegg v. Darragh, 63 Tex. 361; Holliday v. Holliday, 72 Tex. 581, 10 S. W. 690; Brownson v. Reynolds, 77 Tex. 254, 13 S. W. 986; Johnson v. Templeton, 60 Tex. 238; Harn v. Phelps, 65 Tex. 592, etc.), the basis for the claimed invalidity of the judgment sought to be set aside in the cited cases was not apparent of record, or manifest upon the face of the pleadings, as here. A judgment whose invalidity is apparent upon the record may be successfully attacked at any time and under any circumstances. Milam County v. Robertson, 47 Tex. 222; Van Fleet on Collateral Attack, § 4; Bender v. Damon, 72 Tex. 92, 9 S. W. 747; Dunn v. Taylor, 42 Tex. Civ. App. 241, 94 S. W. 347–349. Freeman on Judgments, § 116, says:

"If the want of jurisdiction over either the subject or the person appears by the record, there is no doubt the judgment is void." "The general rule, as stated, is that every presumption will be indulged in favor of the records of superior courts. An important corollary to this rule is that there can be no presumption against the record. For if the record imports absolute verity, its recitals must be equally conclusive when they make against the jurisdiction as when for it. If the record is silent as to jurisdictional facts, it will be aided by presumptions. But if it recites such facts, and the facts recited are not sufficient to confer jurisdiction, there can be no presumption that the recital is incorrect or incomplete." 2 Black on Judgments, §§ 276–278.

Nor will lapse of time nor laches affect the right to vacate a judgment void on its face. Black on Judgments, § 313; Cunningham v. Taylor, 20 Tex. 126–130.

For the reasons indicated, we are of the opinion that the court below erred in holding that the petition of R. L. McCamant was a sufficient basis for the judgment of March 12, 1912, and in not holding said judgment void, and therefore it is our conclusion that the judgment herein should be reversed, and the cause remanded for further proceedings in accord with this opinion; and it is so ordered.

### On Motion for Rehearing.

In appellee's motion for rehearing, his counsel urgently insists that we erred in our original opinion, and cites Belcher v. Ross, 33 Tex. 13, Canales v. Perez, 65 Tex. 293, and George v. Vaughan, 55 Tex. 131, as sustaining the contention that the petition in the original suit, filed October 30, 1911, was good as against a general demurrer, and that therefore the judgment rendered thereon was not void. He admits that of the three cases cited, the first is the strongest in support of his contention, and that, so far as he has found from diligent investigation, it has never been cited, either by the Supreme Court, or by any of the Courts of Civil Appeals. In this case, it was held that in support of a judgment by default, on a note, the presumption will be indulged that the indorsement was made subsequent to the date of the note, and that suit was brought in due time to fix the indorser's liability. While it appears that some statements and arguments are used in the course of the cited opinion as to the expression, "were indebted to him," being an allegation of the fact that suit was filed in due time, which expression we consider, not as an allegation of fact but as a conclusion of law of the pleader, yet, so far as the conclusions therein reached may apply to the issue presented in the instant case, they are not at variance with the views expressed in our original opinion.

[9-12] While it is true that appellee, plaintiff in the original suit, did not in so many words allege the date of the indorsement by Mrs. McCamant, yet by the use of certain expressions contained in the petition he did in effect aver that he acquired the note before maturity. He alleged that he was an "innocent holder for value," and that defendant indorsed the note in blank, and "in due course of business plaintiff became the owner and holder for value." In the law merchant, part of the common law adopted by this state, these terms have a meaning more or less fixed. In the "negotiable instruments law," adopted by many of the states, and embodying, in the main, the principles of the law merchant, it is provided:

"'A holder in due course' is one who has taken the instrument under the following conditions: First, that the instrument is complete and regular on its face; second, that he became owner of it before it was overdue," etc. 2 Words and Phrases (Second Series) 895, and cases there cited; 7 Cyc. 925 (B); 3 R. C. L. § 238, p. 1031, and section 250, p. 1045; 1 Daniel on Negotiable Instruments, § 769a, p. 885; Kneeland v. Miles, 24 S. W. 1113–1115.

An innocent or bona fide holder for value of negotiable paper is one who has taken it in good faith for a valuable consideration in the ordinary course of business, when it was not overdue, etc. 2 Enc. Digest (Texas) p. 904, § B, and cases there cited.

[13] Hence we are forced to the conclusion that plaintiff in the original suit did, in effect and in fact, allege the transfer to him before the maturity of the note, which was some 15 months before suit was filed. As was said in the original opinion, no presumption can be indulged against the record to support the judgment. Courts have no more power, until their action is called into exercise by pleadings, to render judgment in favor of a person than they have to render judg-

ment against a person until he has been brought within their jurisdiction. Dunlap v. Southerlin, 63 Tex. 38, 43; Sandoval v. Rosser, 26 S. W. 930; Railway Co. v. Vieno, 26 S. W. 230; Flores v. Smith, 66 Tex. 115, 18 S. W. 224; Anding v. Perkins, 29 Tex. 348; Neill v. Newton, 24 Tex. 202.

The motion for rehearing is overruled.

---

⊙⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error pending in Supreme Court.