As originally instituted, this suit was to enforce the collection of a certain note for $700 executed by J. W. and *Page 119 
J. H. Woodward, dated January 14, 1910, due August 1, 1910, bearing interest at the rate of 8 per cent. from date, and providing 10 per cent. attorney's fees. The note was payable to Minnie May McCamant, community administratrix, and after maturity was so indorsed by her and delivered to appellee for a valuable consideration. As instituted, the suit was against the makers of the note and against Minnie May McCamant as indorser. At a succeeding term of the court judgment was rendered in favor of the plaintiff against the Woodwards and against Minnie May McCamant, but thereafter on appeal to this court the judgment was set aside, and the cause remanded, on the ground that the plaintiff had not alleged in his petition either compliance with or an excuse for noncompliance with article 579, Vernon's Sayles' Tex. Civ.Stats., which, so far as applicable here, reads:
"The holder of any * * * promissory note, assignable or negotiable by law, may secure and fix the liability of any drawer or indorser of such bill of exchange, and every indorser of such promissory note, without protest or notice, by instituting suit against the acceptor of such bill of exchange, or against the maker of such promissory note, before the first term of the district or county court to which suit can be brought, after the right of action shall accrue; or by instituting suit before the second term of said court, after the right of action shall accrue, and showing good cause why suit was not instituted before the first term next after the right of action accrued."
In an opinion by Mr. Justice Buck this court held that no cause of action as against Minnie May McCamant was presented in the plaintiff's petition, and hence that the petition was bad on general demurrer, inasmuch as it appeared therefrom that suit had not been instituted either at the first or second term of the court after the right of action against Minnie May McCamant accrued as required by the statute. See McCamant v. McCamant, 187 S.W. 1096.
After the cause was remanded in accordance with that opinion the plaintiff, R. L. McCamant, filed an amended petition in which he alleged substantially as before, and further, by way of excuse for not having sooner filed suit:
That J. W. and J. H. Woodward and their estates were continuously, from August 1, 1910, when the note declared upon matured, until the time the suit was filed on October 30, 1911, actually and notoriously insolvent, and also that Minnie May McCamant "requested plaintiff at about the time he acquired said note from her in writing, acting by her attorney, M. W. Stanton, or Stanton Weeks, not to file suit to enforce the collection thereof until instructed so to do by her or her attorneys, agreeing in consideration of plaintiff not filing said suit that she, said defendant, would satisfy said note in full, as soon as she could sell certain real estate that she was then endeavoring to sell; that, if suit was filed, it would interfere with the selling of said real estate, and therefore she did not desire it to be filed; that, relying on said agreement, plaintiff deferred filing this suit until about the time said suit was filed," etc.
To this amended petition the appellant, among other things, pleaded the statute of limitation of four years, and the case proceeded to trial before a jury. The case was submitted upon special issues only, which, so far as thought to be material, were as follows:
"Did or did not S. A. Penix, attorney for the plaintiff herein, receive a letter from M. W. Stanton, as attorney for defendant, requesting a delay in filing suit on said note?
"Were or were not the signers of the note, J. H. and J. W. Woodward, actually and notoriously insolvent on September 21, 1910, and continuously thereafter until the filing of the suit herein?"
Both of the foregoing issues were answered by the jury in the affirmative, and the jury further answered that the letter referred to in the first issue was dated about the 1st of October, 1910. Upon the verdict so rendered the court entered up a judgment in favor of the plaintiff, and the defendant appeals.
The vital question presented by the assignments of error is whether the cause of action against appellant was barred under our statute of limitation of four years. It is undisputed that more than four years elapsed from the time when the plaintiff might have instituted his suit — when his cause of action accrued — until the plaintiff filed his amended petition, which was on April 2, 1917. And hence appellant was clearly entitled to a peremptory instruction in her favor, as she requested, unless it must be said that the plaintiff's amended petition was not, as applied to the circumstances of this case, and strictly speaking, the beginning of the suit against her. In other words, was the amended petition an amplification or enlargement of the original petition, or must the amended petition be accepted as the beginning or initial action against her?
The questions presented have not been entirely free from difficulty, but we have finally concluded that they must all be resolved in favor of appellee and of the judgment below. It has been many times held that a petition bad on general demurrer will stop the statute of limitation. Evans v. Mills, 16 Tex. 196; Ward v. Lathrop, 11 Tex. 287: Killebrew v. Stockdale, 51 Tex. 529; Burnett v. Casteel, 36 S.W. 782; Kauffman v. Wooters, 79 Tex. 205, 13 S.W. 549; T. P. R. R. Co. v. Johnson, 34 S.W. 188; Tarkinton v. Broussard, 51 Tex. 555; Day v. Trading Co.,183 S.W. 85; Williams v. Warnell, 28 Tex. 612; T. P. R. R. Co. v. Hamm, 2 Willson, Civ.Cas.Ct.App. § 491; Lyle v. Harris, 1 White W. Civ.Cas.Ct.App. § 71; Warner v. Bailey, 7 Tex. 521.
The first two cases above cited hold that, where the original petition failed to show that the court had jurisdiction of the defendant, it could be amended so as to show jurisdiction without stating a new cause of action. In Killebrew v. Stockdale, supra, it was held that a petition on a promissory note bad on general demurrer for want of averment of ownership of a note, constituted a sufficient commencement of a suit to stop the running *Page 120 
of the statute of limitation, and that the amendment to cure this defect was not the starting of a new cause of action or the commencement of a new suit. The other cases cited will further illustrate the proposition above stated.
The contract of an indorser of a negotiable promissory note is thus stated in section 363, title Bills and Notes, of 3 R.C.L., viz.:
"The full contract which the general commercial law implies from the indorsement of a negotiable promissory note on the part of the indorser, with and in favor of the indorsee, and every subsequent holder to whom the note is transferred, is: (1) That the instrument itself, and the antecedent signatures thereon, are genuine; (2) that he (the indorser) has a good title to the instrument; (3) that he is competent to bind himself by the indorsement as indorser; (4) that the maker is competent to bind himself to the payment, and will, upon due presentment of the note, pay it at maturity, or when it is due; (5) that if, when duly presented, it is not paid by the maker, he (the indorser) will, upon due and reasonable notice given him of the dishonor, pay the same to the indorsee or other holder."
The quotation made from Ruling Case Law seems to state the obligation of an indorser as established by the authorities generally, and hence, when appellee filed his original petition, as he did, setting up the execution of the notes by the Woodwards, and its indorsement by appellant, followed by the allegations that the parties named thereby became liable and indebted to him, a cause of action as against appellant in part at least seems to have been stated. The petition only lacked allegations setting up an excuse for not having earlier filed the suit. By again referring to article 579, earlier quoted in this opinion, it will be observed that there is no express declaration that an indorser shall be entirely released or discharged by a failure to institute suit at the first term after the right of action accrues or by instituting the suit before the second term showing good cause why the suit was not instituted before the first term. The article evidently was intended merely to provide a cumulative remedy for the holder to fix the liability of an indorser without protest or notice as required by the law merchant. By the law merchant, when a negotiable bill or note was dishonored by nonpayment at its maturity, it was the duty of the immediate holder to give notice of such dishonor to the indorser; for it was regarded as entering as a condition in the contract of the indorser that he should only be bound in the event on nonpayment, and that upon nonpayment, unless notified thereof, he should be discharged in the absence of some excuse exonerating the holder. Excuses, however, were available. See section 399, title Bills and Notes, 3 R.C.L., and other authorities that might be cited. Such has been the ruling of our courts for failure to comply with article 579 by instituting suit at the first or second term after the cause of action accrues. See Norton v. Wochler,31 Tex. Civ. App. 522, 72 S.W. 1025; Costin v. Burton Lingo,57 Tex. Civ. App. 634, 123 S.W. 177; Bank v. Robinson, 124 S.W. 177. In several of the cases cited and in the case of Insall v. Robson,16 Tex. 128, Hanrick v. Alexander, 51 Tex. 494, and Burrow v. Zapp,69 Tex. 474, 6 S.W. 783, it is expressly held that the insolvency of the maker of a note since its execution would excuse the failure of a plaintiff to institute a suit as required under the statute, and it was further held in the cases of Williams Brothers v. Rosenbaum, 79 S.W. 594, and Ketterson v. Inscho, 55 Tex. Civ. App. 150, 118 S.W. 628, that an indorser might waive the duty of the holder to institute suit as required by the statute. See, also, Bank v. De Morse, 26 S.W. 417; Smith v. Lumber Co., 92 Tex. 448, 49 S.W. 574.
The verdict of the jury in this case has not been attacked on the ground of insufficiency of the evidence to sustain it. We therefore have a case, as we think, of a plaintiff originally suing an indorser upon a liability undoubtedly existing under the law at the time of the filing of his suit and under no legal necessity in fact to comply with article 579. In other words, under the findings of the jury the liability of appellant as an indorser of the note declared upon was in fact absolute, and the failure of the plaintiff originally consisted of a mere defect in the pleading, and not because of an absence of the facts, which gave him a perfect right to recover. The original petition, in part at least, as it seems to us, presented the liability of appellant, and while that petition was defective and bad on general demurrer, as held on the former appeal, it was not so entirely devoid of necessary allegations as to preclude the later amendment, which presented the excuses that at all times existed for not having filed suit at the first term, or at the second term with excuses shown for not filing at the first term. In speaking of amendments to a complaint in an action on a note it is said in 8 Corpus Juris, p. 954, § 1244, that:
"Subject to the rules relating to the amendments of pleadings in all actions, amendments will generally be permitted in the furtherance of justice provided a new and distinct cause of action is not introduced."
The following application of the rule is here made:
"Thus a mistake in the date or time of payment, in the date of notice of dishonor, or in the amount of the note may be cured by amendment. So the failure to allege presentment for payment or the giving of notice of dishonor may be cured by amendment."
Under the rule of the law merchant a failure to allege presentment for payment or the giving of notice of dishonor would certainly subject a petition upon a promissory note to demurrer, and if, as stated by this authority, such failure may be cured by amendment, we see no reason why an excuse for failure to comply with article 579, requiring suit at the first or second term, may not also be *Page 121 
supplied by amendment. The case of Bigham v. Talbot Cropper,63 Tex. 271, was one in which the plaintiff first declared upon one cause of action and later abandoned it by filing an amendment setting up another distinct cause of action, and yet later again filed an amendment setting up his original cause of action. The court in holding that the statute of limitation ran against the original cause of action up to the time of the last amendment filed had this to say:
"If, however, there had been any allegations in the first amended petition in any way retaining, even as part of the cause of action therein asserted, that which was asserted by the original petition, and afterwards reasserted by the second amended petition, that would have been sufficient to prevent the running of the statute after the original petition was filed."
In the case before us, as already pointed out, more than one of the facts essential to appellant's liability were alleged. The only failure was the failure to allege the facts necessary under the statute to fix that liability. In this respect the case before us is different from one where the plaintiff fails to allege facts necessary under our statute to fix a laborer's lien or where a plaintiff first declares upon a note that is barred by limitation, and thereafter by amendment sets up a new promise to pay as in Howard Hume v. Windom, 86 Tex. 560, 26 S.W. 483. For it is a statute in one case, and a new promise in the other, that constitutes the cause of action. Not so here, as we have seen appellee's cause of action, regardless of article 579, in fact existed at the time of the filing of appellee's original petition and was in part declared upon. We accordingly hold that appellee's amended petition did not set up a new cause of action, and that such amendment related back to the filing of the original suit, which it is undisputed had been filed within four years from the maturity of the note declared upon.
What we have said, we think, sufficiently disposes of the material questions presented. It is accordingly ordered that all assignments of error be overruled, and the judgment affirmed.
Affirmed.